RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
KATE BERRY
Nevada State Bar No. 14346
AARIN E. KEVORKIAN
Nevada State Bar No. 14556
Assistant Federal Public Defenders
201 W. Liberty Street, Ste. 102
Reno, Nevada 89501
(775) 321-8451
Kate_Berry@fd.org
Aarin_Kevorkian@fd.org

Attorneys for Keith Moreno

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 3:20-cr-00029-WBS-DLB |
| v. | **Sentencing Memorandum**[1] |
| KEITH MORENO, | |
| Defendant. | |

Keith Moreno, through his counsel Assistant Federal Public Defender Kate Berry, respectfully submits this Sentencing Memorandum joining in probation's recommendation of a time-served sentence. Mr. Moreno requests, however, that he not be placed on any additional supervision.

---

[1] This Sentencing Memorandum is filed one day late with no objection from the government.

**I.     ARGUMENT**

    **A.     Mr. Moreno lost his temper after his wife was tear gassed by the police.**

The events in this case unfolded on May 30, 2020. Mr. Moreno and his wife were in downtown Reno on their way to Money Tree to pick up necessary funds for their household. That evening, downtown Reno was overtaken by protests related to the killing of George Floyd. Mr. Moreno and his wife were not participating in the protests, but were simply trying to navigate the many downtown road closures to get to the Money Tree. On their way, tear gas was thrown into the downtown crowds, hitting Mr. Moreno's wife.

Mr. Moreno's wife suffered a severe reaction to being tear gassed. She has a number of medical conditions that make her more susceptible to its effects, including epilepsy and asthma. Mr. Moreno took her home immediately to care for her. Mr. Moreno explains that she was crying and screaming in pain. She was having trouble breathing.

Mr. Moreno became angrier and angrier seeing the pain his wife was experiencing. Once she began to recover, Mr. Moreno got in his car and started driving around to calm down. He saw a large gathering outside the courthouse and got out of his car. He still hadn't calmed down. He said that he saw other individuals throwing objects at the building and joined in. He threw a trash receptacle and then a rock. Only the rock made contact with the building – hitting and breaking a pane of glass. Mr. Moreno did not know the building was a federal courthouse.

Mr. Moreno lost his temper in response to his wife being hurt. While his conduct was unacceptable – resulting in a federal felony conviction – it was never his intention to cause any individual harm. He did not hurt anyone and never wanted to hurt anyone. He threw two objects at a building window, breaking it. The building was empty at the time (around 11:00pm).

Mr. Moreno was also not trying to show disrespect for the courthouse. As noted above, he did not realize the building was a federal courthouse. He stopped after seeing there

was a crowd and joined in with others. Mr. Moreno has demonstrated respect for this Court in each hearing and for the courthouse at his change of plea (his only in person appearance). The same level of respect is anticipated at his sentencing.

Finally, Mr. Moreno vehemently denies that he ever bragged about what occurred or that he tried to change his appearance to avoid being identified. In fact, these two accusations are contradictory – telling individuals you did something while trying to avoid detection. As this Court has observed in the many hearings with Mr. Moreno, he changes his hair often. He has repeatedly and consistently taken responsibility for his actions. Furthermore, his account of what happens has been consistent. He told the FBI on the date of his arrest exactly what he did and that it was a poor decision made in anger after his wife was tear gassed.

**B.     Mr. Moreno's temper is rooted in childhood trauma.**

As a young child, Mr. Moreno was raised by his mother and grandparents. However, when he was six years old, his life was upended when his mom was sent to prison for writing bad checks. From that point on, family started bouncing him around from household to household. When he was around seven, Mr. Moreno lived temporarily with his uncle, who was regularly physically and emotionally abusive.

When Mr. Moreno needed his father – not only for a stable home, but also for support and love – Mr. Moreno's father rejected him. His father repeatedly denied that Mr. Moreno was his son and failed to follow through on promises. For example, Mr. Moreno's father would agree to pick him up for an event or a meal, and would leave him outside waiting and never show up.

Perhaps as a response to this trauma, Mr. Moreno is hyper-protective of the people who are close to him. As Mr. Moreno's history reflects, his outbursts of anger are typically the result of feeling protective over someone whom he loves. In this case, he lost his temper following his wife being hit with tear gas.

**C. During 14 months of pretrial supervision, Mr. Moreno has developed the tools necessary to gain control of his temper.**

It is clear from Mr. Moreno's personal history that he had never developed coping mechanisms to process his anger. The only psychological treatment he had undergone was when he was eight years old, and he participated in court-ordered counseling to help him manage his home situation. However, since Mr. Moreno has been on pretrial supervision, he has completed six months of anger management classes, successfully graduating from the program.

Mr. Moreno has developed critical coping skills in his anger management classes, as demonstrated in his record on pretrial supervision. Mr. Moreno has fully complied with the conditions of his supervision. PSR, ¶ 6. This achievement is particularly remarkable given the stress that accompanies being charged with, and then ultimately pleading guilty to, a federal felony. This period of time has been shaped by anxiety over court hearings, plea negotiations, the change of plea, and preparing for sentencing. Following court proceedings, there has also been media coverage about Mr. Moreno and his crime. As a result of this coverage, he has lost several jobs.

Throughout these stressful, and in some cases infuriating events, Mr. Moreno has utilized the coping skills he learned in his anger management classes and remained calm. He has consistently found new employment and supported his family. He has never lashed out or behaved inappropriately. In fact, Mr. Moreno's wife told probation that he "is 100% better than he used to be" and that "he thinks before he reacts now and turns from his aggression." PSR, ¶ 48.

**D. Mr. Moreno has taken full responsibility, pleading guilty to a felony, and agreeing to pay full restitution.**

Mr. Moreno has paid severely for his actions. Mr. Moreno lost his temper and broke a window of the federal courthouse. Because of the significance of the property he damaged, he was charged with a federal felony. Had the circumstances been slightly different – had he

4

destroyed private property or less valuable property – he could have easily been charged with a state misdemeanor.

Yet, because of the circumstances here, Mr. Moreno was charged with a federal felony. Mr. Moreno made the decision to accept full responsibility and plead guilty. He has no criminal history.

As this Court is well aware, a felony changes an individual's life. Mr. Moreno will need to register as a felon for the rest of his life. This conviction will result in the loss of critical benefits of citizenship. He will no longer be able to serve on a jury. He can't possess a weapon.

Mr. Moreno will also have to check a box for the rest of his life that will disqualify him from certain jobs, educational opportunities, and benefits. As explained above, Mr. Moreno has lost jobs due to publicity following his court appearances. Mr. Moreno has also lost his reputation.

Mr. Moreno has agreed to make whole what he destroyed. The plea includes Mr. Moreno's agreement to pay full restitution. While the restitution amount is modest in the scope of what may accompany federal cases, it is a profound sum for an indigent individual. Mr. Moreno supports his wife and family, with a new baby on the way. This agreement will be a financial hardship for him and his family and will mean that no matter his employment obstacles, he will need to work fulltime.

**E.     The United States Attorney's Office Financial Litigation Unit can ensure that Mr. Moreno pay his restitution; criminal supervision is unnecessary and not a good use of resources.**

The fact that Mr. Moreno must pay restitution in this case should not be a reason to impose criminal supervision. The United States Attorney's Financial Litigation Unit is perfectly positioned to ensure that restitution is recouped. Undersigned counsel has worked with this unit in a number of cases, both in cases in which no supervision was imposed and in cases in which restitution remained outstanding when supervision was terminated. In either situation, outstanding restitution becomes a matter for civil collections. The Financial Litigation Unit then

enforces the payment of that debt. It does so by not only setting a schedule of monthly payments, but also by placing a lien on the debtor's estate that ensures the government is paid first on any debts.

As a result, Mr. Moreno's restitution should not be a reason to impose criminal supervision, which comes with significant costs, both fiscal and time. For the past 14 months, Mr. Moreno has demonstrated that he can comply with supervision. Mr. Moreno has reaped the benefits of that supervision and incorporated it into his life. Addition supervision is not necessary in this case and Mr. Moreno's outstanding restitution is not a reason to impose supervision here.

**Dated:** September 10, 2021.

Respectfully submitted,
RENE L. VALLADARES
Federal Public Defender

By: */s/ Kate Berry*

KATE BERRY
Assistant Federal Public Defender
Attorney for Keith Moreno

**CERTIFICATE OF ELECTRONIC SERVICE**

The undersigned hereby certifies that she is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on September 10, 2021, she served an electronic copy of the above and foregoing Sentencing Memorandum by electronic service (ECF) to the person named below:

> CHRISTOPHER CHIOU
> Acting United States Attorney
> ANDOLYN JOHNSON
> Assistant United States Attorney
> 400 South Virginia Street, Suite 900
> Reno, NV 89501

*/s/ Katrina N. Burden*
Employee of the Federal Public Defender